**17 MAG 8363**              ORIGINAL

Approved:  ___*Lara Pomerantz*___
           LARA POMERANTZ
           Assistant United States Attorney

Before:    HONORABLE HENRY B. PITMAN
           United States Magistrate Judge
           Southern District of New York



- - - - - - - - - - - - - - - - x
                                :   **COMPLAINT**
UNITED STATES OF AMERICA        :
                                :   Violation of
         - v. -                 :   21 U.S.C. § 841(a)(1)
                                :   and 841(b)(1)(A)
LENIN HERRERA,                  :
                                :   COUNTY OF OFFENSE:
                                :   NEW YORK
                 Defendant.     :
                                :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   JAMES L. FEASEL, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE

   1.  On or about November 6, 2017, in the Southern District of New York, LENIN HERRERA, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

   2.  The controlled substance involved in the offense was one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code 841(b)(1)(A).

      (Title 21, United States Code, Sections 841(a)(1), and
                        841(b)(1)(A).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and others, as well as my examination of report and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

4. Based on my participation in this investigation and conversations with others, including other law enforcement officers, I have learned, among other things, the following:

a. On or about September 7, 2017, law enforcement agents arrested an individual ("Individual-1") in the Southern District of New York for conspiracy to distribute and possess with intent to distribute heroin. Following his arrest, Individual-1 consented to a search of his bedroom, where law enforcement agents recovered four packages of a powdery substance ("Packages-1"). Based on the packaging and appearance of Packages-1, my participation in the investigation of Individual-1, and conversations between Individual-1 and a cooperating witness[1], I believe that each package contains approximately one kilogram of heroin.[2]

b. On or about September 7, 2017, Individual-1 consented to a search of his cellular phone, which had four missed calls from a particular telephone number ("Phone Number-

---

[1] Since in or about early 2017, CW-1 has been providing information to the Government in the hopes of receiving leniency in sentencing. Information provided by CW-1 as part of this investigation and other investigations has proven reliable and been corroborated by other independent evidence.

[2] Law enforcement agents have requested that the substances in Packages-1 be tested in a DEA laboratory. The results of the laboratory testing on Packages-1 are still pending.

1"). Based on my participation in this investigation, including my conversations with a representative of a New York City agency, I have learned that Phone Number-1 is associated with a cellphone used by LENIN HERRERA, the defendant.

   c. On or about October 30, 2017, United States Magistrate Judge Barbara Moses signed a warrant authorizing the acquisition of geolocation data for Phone Number-1.

   d. On or about November 6, 2017, I and other law enforcement officers conducted surveillance in the vicinity of Old River Road in Edgewater, New Jersey. The geolocation data for Phone Number-1 indicated that the cellphone associated with Phone Number-1 was in that vicinity. At approximately 4:30 p.m., I and other law enforcement officers observed HERRERA exit an apartment building carrying a weighted, square-shaped black backpack (the "Backpack"). HERRERA walked towards a black BMW ("Vehicle-1"), which was parked in a nearby parking lot. After approximately five minutes, I and other law enforcement officers observed Vehicle-1 exit the parking lot and drive north towards the George Washington Bridge.

   e. On or about November 6, 2017, at approximately 4:45 p.m., a New York City Police Department ("NYPD") detective ("Detective-1") observed Vehicle-1 run a red light in Manhattan. Detective-1 conducted a traffic stop of Vehicle-1 in the vicinity of East 178th Street and St. Nicholas Avenue in Manhattan ("Location-1"). The driver of Vehicle-1 was HERRERA.

   f. At approximately 4:55 p.m., "Cedo," a trained canine for narcotics detection, including in vehicles,[3] arrived

---

[3] I am informed by Cedo's handler, a Port Authority of New York / New Jersey Police officer, that Cedo is a German Shepherd, originally certified as a narcotics detection canine after completing certification with the Port Authority Police Academy in July 2008. Cedo was certified to detect the odors of marijuana, cocaine, heroin, ecstasy, methamphetamines, and their derivatives. Since that time, Cedo has received numerous hours of training and is utilized regularly for the purpose of detecting narcotic odors. Cedo has been involved in hundreds of search warrants and has made numerous positive identifications. During Cedo's training and in order to be certified, he is subjected to numerous objects both containing and not containing narcotics. He is trained to differentiate and to give a positive indication if he detects the odors of narcotics. Cedo was last certified in August 2017. Cedo is routinely used to

3

at Location-1. Cedo sniffed the exterior and interior of Vehicle-1 and reacted by scratching the front glove compartment area, the front/middle console, and the rear/middle console between the rear seats of Vehicle-1. I am informed by Cedo's handler that Cedo's reaction to Vehicle-1 indicated a positive alert for the odor of controlled substances in the aforementioned locations.

        g. Following the positive hits by Cedo for the presence of narcotics in Vehicle-1, I took possession of Vehicle-1 and drove it to a precinct in Manhattan (the "Precinct"). Other law enforcement officers separately transported HERRERA to the Precinct.

        h. After his arrival at the Precinct, HERRERA told law enforcement officers, in substance and in part, that he wanted to cooperate and that there was a "trap" (the "Trap")[4] for concealing narcotics in Vehicle-1. HERRERA showed law enforcement officers how to access the Trap, which was located in the rear/middle console of Vehicle-1. The Trap contained four packages containing a substance ("Packages-2"). Based on my training, experience, and participation in this investigation, including the appearance of Packages-2, I believe that each package comprising Packages-2 weighs approximately one kilogram. HERRERA was then placed under arrest.

        i. Based on my training and experience, my participation in this investigation and the investigation of Individual-1, and the similarity of the packaging and appearance between two of the packages of Packages-2 and two of the packages of Packages-1, I believe that at least two of the

---

conduct searches of automobiles, residences, packages and suitcases. Cedo alerts after detecting the scent of narcotics. Cedo will positively alert his handler to the presence of the odor of marijuana, cocaine, heroin, ecstasy, and methamphetamine and their derivatives. He has successfully given positive indications of narcotics in the field in the past and generally has proven reliable in the field.

[4] Based on my training, experience, and participation in this investigation and others, I know that a "trap" is a hidden compartment used by drug traffickers to transport large quantities of narcotics in a concealed manner.

4

packages found in the Trap each contain approximately one kilogram of mixtures and substances containing heroin.[5]

        j.   At the Precinct, law enforcement officers recovered the Backpack that HERRERA had been observed carrying earlier from the backseat of Vehicle-1. Law enforcement officers removed the Backpack from Vehicle-1. Cedo sniffed the Backpack and scratched the Backpack. I am informed by Cedo's handler that Cedo's reaction to the Backpack indicated a positive alert for the odor of controlled substances.

        5.   On or about November 6, 2017, after the arrest of LENIN HERRERA, the defendant, HERRERA was read his Miranda rights. HERRERA waived his rights and volunteered to speak with law enforcement officers. During his post-arrest interview, HERRERA admitted, in substance and in part, that he obtained Packages-2 from a relative, that HERRERA believes Packages-2 contains heroin or cocaine, and that HERRERA is a courier of narcotics.

        WHEREFORE, the deponent respectfully requests that LENIN HERRERA, the defendant, be imprisoned or bailed as the case may be.

_____
JAMES L. FEASEL
Special Agent
Drug Enforcement Administration

Sworn to before me this
7th day of November, 2017.

_____
THE HONORABLE HENRY B. PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

---

[5] Because of the possibility that the substances in Packages-2 might contain fentanyl, and the danger in processing fentanyl to the safety of law enforcement officers, the substance in Packages-2 has not been field-tested.